<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BERNARDA GOMEZ,<br><br>                          Appellant,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                          Appellee. | Civ. No. 08-4499 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

LANGTON & ALTER
P.O. Box 1798
2096 Saint Georges Ave.
Rahway, NJ 07065

    *Attorneys for Appellant*

RALPH J. MARRA JR.
Acting UNITED STATES ATTORNEY for the District of New Jersey
by: Kristina Cohn
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278

    *Attorney for Appellee*

**DEBEVOISE, Senior District Judge**

       Appellent Bernarda Gomez ("Appellent"), pursuant to section 205(g) of the Social

Security Act ("the Act"), seeks this Court's review of the Commissioner of Social Security's

("Commissioner") final determination that she is not entitled to Disability Insurance Benefits

("DIB") or Supplemental Security Income ("SSI") payments.  Appellant argues that the Administrative Law Judge ("ALJ") presiding over the adjudication below improperly utilized and applied the Grid Rulings ("grids") to deny Appellant benefits when she suffered non-exertional impairments not covered by the grids.  Appellant argues the ALJ was required to receive testimony from a vocational expert ("VE").  Both parties agree to remand, but disagree as to what step the case should be remanded.  Since Appellant contests only the ALJ's failure to hear testimony from a VE, she requests remand to Step 5.  Commissioner, in contrast, argues that it is improper to remand to a particular step, and instead requests remand for re-evaluation at Steps 1-5.  For the reasons set forth below, the Commissioner's determination will be remanded for further proceedings at Step 5.

## I.  BACKGROUND

Appellant is a 36 year old woman with a high school education.  (R. at 27.)  She was employed as a picker and packer in a factory until she left work in September 2005.  *Id*.  Her responsibilities included placing clothes into boxes, walking for four hours per day, standing four hours per day, and frequently lifting and carrying ten pounds.  *Id*.

Appellant suffered from rheumatic heart disease since childhood.  In May 2005, after suffering exertional congestive heart failure, Appellant underwent a mitral valve repair.  (R. at 24.)  Subsequently, in November 2005, Appellant applied for Benefits after she attempted but was unable to return to work due to pain and discomfort from the open heart surgery.  (R. at 103.)  Appellant's claim was denied initially and upon reconsideration.  (R. at 23.)  She then requested and was granted a hearing before an ALJ, and appeared before the ALJ with counsel on December 13, 2006.  *Id*.  At the hearing, Appellant testified that she had chest pain but was unable to take the medication prescribed for the pain because she was pregnant.  (R. at 239-40.)

She stated that she spent most of her time at home watching television, and received assistance from her son to pick up her groceries and assistance from her friend to do various household chores, such as cleaning and cooking. (R. at 241-42.) Appellant was able to do light cooking three times a week with assistance from her boyfriend, and she was able to do light shopping with assistance from her boyfriend. (R. at 26.) She was able to shower and dress without assistance. *Id*. Appellant further testified that she could only stand for four or five hours at a time, and suffered from shortness of breath after walking half a block. (R. at 243.)

In addition to Appellant's testimony at the hearing, the ALJ considered several medical evaluations conducted after Appellant's open heart surgery. In a post-operative follow up note in June 2005, the Director of Cardiovascular and Thoracic Surgery, Dr. Mark Connolly, stated that Appellant was doing reasonably well, but recommended cardioversion within the upcoming one or two months following her surgery. (R. at 24, 178.) Dr. Connolly also noted that Appellant had "some mild aortic insufficiency which will need to be followed and may need to be dealt with in the future." *Id*. Appellant was subsequently examined by Dr. Rakesh Sahni in October 2005, who noted that Appellant had symptoms of mild weakness, atypical chest pains, and shortness of breath. (R. at 24.) After a follow-up visit in February 2006, however, Dr. Sahni stated that Appellant was doing fine and did not suffer from any new chest pain or shortness of breath. *Id*.

In March 2006, Appellant was once again examined by Dr. Connelly, reporting pain at the incision site. *Id*. She subsequently underwent surgery in April 2006 to repair the incision wound, which was conducted without complication. *Id*. In a follow-up note, Dr. Sahni stated that Appellant was doing much better following the surgery repairing her incision, and Appellant's lungs were clear and she had no abnormal heart rhythm. *Id*. Finally, Appellant was

examined by Dr. Dyana Aldea in August 2006, where she complained of fatigue, chest palpitations, aortic regurgitation (an improperly closing aortic valve causing blood leakage), daily chest palpitations, and a history of asthma (diagnosed in 1994). *Id*. Appellant reported at the time that she was not taking any medication for asthma because she was pregnant. *Id*. Further, Appellant reported to Dr. Aldea that she had never been hospitalized or intubated for asthma, and she had only visited her asthma doctor approximately two times in 2005. (R. at 25.) Dr. Aldea diagnosed Appellant with chest palpitations, fatigue, asthma, allergies, aortic regurgitation, mitral valve prolapse (valve flaps in the heart fail to close completely, causing a murmur), and status post mitral valve repair. *Id*. Dr. Aldea stated that Appellant was limited to activities that required no more than moderate exertion, and that she should avoid exposure to dust, smoke, and other known respiratory irritants. *Id*.

After considering the medical evidence and the hearing testimony, the ALJ issued an opinion denying Appellant's request for DIB and SSI payments. In the course of his opinion the ALJ concluded that Appellant had an unsuccessful work attempt, and although finding that Appellant had "a combination of 'severe' impairments," the ALJ concluded that Appellant "retain[ed] the residual functional capacity to perform exertional demands of sedentary work not requiring exposure to dust, fumes, or other pulmonary irritants." (R. at 25, 27.) The ALJ further found that Appellant could not perform her past relevant work since she could perform only limited standing and walking, and she could not tolerate dust, fumes, and other irritants. (R. at 27.) Finally, the ALJ found that Appellant had environmental limitations regarding exposure to pulmonary irritants, but that this did not "erode the occupational base of sedentary work." (R. at 28.) As a result, relying on the tables promulgated by administrative rule-making (the "grids"), the ALJ concluded that Appellant could perform the demands of sedentary work, and thus would

4

be able to find work in the national economy. *Id*. Therefore, the ALJ concluded that Appellant was not disabled. *Id*.

Appellant timely appealed the ALJ's decision to the Social Security Administration's Appeal Council, which, in a pro forma opinion that ignored Appellant's serious challenge to the ALJ's decision, denied Appellant's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (R. at 4.) Appellant then instituted this action to review the Commissioner's decision.

## II. DISCUSSION

The Commissioner concedes that the ALJ erred by failing to hear testimony from a VE at Step 5 of the inquiry. The only issue before the Court is whether the case should be remanded in its entirety or only for further proceedings at Step 5. The Commissioner asserts that the case should be remanded for a new proceeding because new evidence may come to light that will need to be addressed by the ALJ. Furthermore, the Commissioner argues that this Court must remand for re-evaluation of all five steps as a matter of law. Appellant, in contrast, argues that the case only needs to be remanded for a hearing at Step 5. The Court concludes that the Commissioner failed to present new evidence that would call the ALJ's decisions in Steps 1 through 4 into question, and the Court is also not required as a matter of law to remand to Step 1. Therefore, the case will be remanded for re-evaluation at Step 5.

**A. Standard of Review**

On appeal of a decision by the Commissioner of Social Security, a district court exercises plenary review of all legal issues in the case. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). A district court's review of the Commissioner's factual findings, however, is deferential and limited to determining whether the conclusions are supported by substantial evidence. 42 U.S.C.

§ 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) ("A district court will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the district court] would have decided the factual inquiry differently."). However, a district court need not blindly follow factual determinations that lack support in the record or are against the clear weight of the evidence adduced below. Substantial evidence consists of "more than a mere scintilla" of support for a determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, the Commissioner's ruling will be affirmed only if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

**B. Determination of Disability**

Under the Social Security Act, Disability Insurance Benefits are provided to individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To constitute a disability, the impairment must be "expected to result in death" or "last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A).

An ALJ determines whether an individual is disabled, and therefore entitled to Disability Insurance Benefits, by using a five-step evaluation process. See 20 C.F.R. § 404.1520(a). A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry. The five stages of inquiry proceed as follows:

*Step 1: Substantial Gainful Activity.* The ALJ must first determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(*i*). Substantial gainful

activity is work activity that involves doing significant mental or physical activity for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(i).

*Step 2: Severity of Impairment.* If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered "severe" if it significantly limits the individual's physical or mental ability to do basic work activities. § 404.1520(c). If the ALJ finds that an individual's impairment is not severe or does not meet the 12 month durational requirement, then the ALJ must find that the claimant is not disabled. § 404.1520(a)(4)(ii).

*Step 3: Listed Impairments.* If the ALJ determines that the claimant's impairment is severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(a)(4)(iii). The impairments listed in Appendix 1 are presumed severe enough to preclude substantial gainful activity. If the ALJ finds that the individual's impairment is listed in Appendix 1 and has met the 12 month durational requirement, then the ALJ must find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

*Step 4: Past Relevant Work.* If, however, the individual's impairment is not listed in Appendix 1, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his or her "past relevant work," meaning the individual's prior job or a similar occupation. 20 C.F.R. § 404.1520(a)(4)(iv). Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his or her impairment. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). If the ALJ finds that the

individual has the capacity to perform past relevant work, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(iv).

*Step 5: Adjustment to Other Work.*  If the claimant cannot perform past relevant work, then the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work.  20 C.F.R. § 404.1520(a)(4)(*v*).  Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).  If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(v).  However, if the ALJ finds that the individual cannot adjust to other work, then the ALJ must find that the claimant is disabled.  Id.

While the individual claimant bears the burden of persuasion on Steps one through four, the burden shifts to the Commissioner on the fifth Step.  At the fifth Step, the Commissioner must prove that the individual is capable of performing gainful employment other than his past relevant work and that such jobs exist in substantial numbers in the national economy.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

**C.  The Commissioner's Findings and Conclusions**

The Commissioner concedes that the ALJ erred by failing to hear testimony from a VE at Step 5 and requests that the case be remanded.  The ALJ incorrectly relied on the grids at Step 5 to determine whether Appellant, who has both exertional and nonexertional limitations, would be able to find work in the national economy.  The grids should only be used when the claimant has exertional impairments.  Sykes v. Apfel, 228 F.3d 259, 269 (3d Cir. 2000).  When nonexertional

8

impairments exist, the ALJ must rely on "the testimony of a vocational expert or other similar evidence, such as a learned treatise." *Id*. at 273.

While both parties agree to remand, each requests remand to a different step. The Commissioner argues that the ALJ should re-try all five steps of the inquiry. In support of that argument, the Commissioner does not assert that the ALJ erred in his ruling on Steps 1 through 4, but rather that an entirely new proceeding should be held because "it is possible that new evidence would alter the conclusions that an adjudicator would reach in the absence of such evidence." The Commissioner does not elucidate the nature of those facts, nor does he give specific details as to how they might undercut the ALJ's earlier decision. Rather, he points out various medical evidence that was in the record and considered by the ALJ, and that actually supports the ALJ's prior ruling in Steps 1 through 4.

The Commissioner points to a report in the record from a state medical consultant that indicates Appellant could "occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk at least two hours in an eight-hour workday, sit at least six hours in an eight-hour workday, and had unlimited pushing and pulling ability." The ALJ examines this and other evidence on the record at Steps 2 and 3, and concludes that "there is no reason why [the Appellant] could not perform the exertional demands of sedentary work which involved the [sic] lifting no more than 10 pounds at a time, standing and walking up to two hours and sitting for six hours during an eight hour day." (R. at 26.) This evidence put forward by the Commissioner, therefore, was already considered by the ALJ, and it does not alter the outcome. The Commissioner fails to show that the ALJ's conclusions are unsupported by substantial evidence or that the record is incomplete.

Next the Commissioner cites evidence in the record that Appellant had a history of asthma but was not taking any medication for it, and had only seen her asthma doctor twice in 2005. The Commissioner also points to evidence in the record that Appellant cooked and shopped with her boyfriend's assistance, took care of personal needs, watched television, read, and socialized with friends on a daily basis. The ALJ also examined this evidence and used it to support his conclusions. Based on an evaluation of this and other evidence, the ALJ summarizes that despite Appellant's pain and discomfort, she "was able to do light cooking three times a week with some help from her boyfriend; that she could do light shopping with the assistance of her boyfriend; and that she could shower and dress herself without assistance." *Id*. The ALJ then concludes that "while the claimant may experience some pain and discomfort from her condition, her subjective complaints of pain and limitation are far in excess of what could reasonably be expected from her activities of daily living, medical condition, and the objective medical evidence." *Id*. Here again, the ALJ's conclusion is supported by the very evidence cited by the Commissioner. Thus, the Commissioner fails to present any new evidence that was not examined by the ALJ. Nor does the Commissioner show that any part of the ALJ's decision in Steps 1 through 4 is not supported by substantial evidence. Consequently, the court finds no reason to reverse the ALJ on Steps 1 through 4.

A problem that this case presents is not that there is a lack of evidence to support the ALJ's Step 2 finding of severity. Rather, the problem is that the ALJ's findings severely minimize the degree of severity of Appellant's impairments and minimize the effect of the impairments upon Appellant's ability to work.

The impairments that the ALJ found to be severe were those involving status post mitral valve replacement and asthma. This did not take into account the other impairments from which

Appellant suffered and which are referred to throughout the reports not only of the Appellant's physician but also throughout the reports obtained by the Commissioner.

Physical Residual Functional Capacity Assessment Reports stated: Primary Diagnosis: rheumatic heart disease; Secondary Diagnosis: s/p mitral valve repair; Other Alleged Impairments: aortic valvular regurgitation.  (e.g. R. at 150.)  The same Report recited: "The symptoms of chest pain, dyspnea and fatigue are attributable to the MDIs listed on page one. The severity of the symptoms and its effect on function is partially consistent with the totality of the MER."  (R. at 155.)

There is in the record a June 21, 2006 response to a New York Office of Temporary and Disability Assistance Request for Medical Advice.  Recommending extensive further testing the response notes Appellant's impairments:

> On her appeal form – 3441 dated 3/20/06, she has mentioned worsening of her condition, gets short of breath quickly, basic work related functions are significantly restricted.  She has mentioned "no" to any new illness or injury since last disability report.
> According to information in file the claimant has had rheumatic heart disease, had significant increasing exertional congestive heart failure, echocardiogram had shown 4 + mitral regurgitation and 1-2 + aortic insufficiency, ejection fraction was approximately 50% with mildly dilated left ventricle; she underwent mitral valve repair with 34 mm Edward Life Science angioplasty ring and repair of posterior leaflet prolapse on 5/19/05 by Mark W. Connelly, MD.  She had developed a blister in the upper part of sternal incision which was lanced under sterile condition by Dr. Connelly on 6/05.

(R. at 189.)

An August 28, 2006 report of Dr. Aldea of Industrial Medicine Associates, P.A. stated:

Diagnoses:

1. Chest palpitations.
2. Fatigue.

11

       3. History of mitral valve prolapse, status post mitral valve repair.
       4. Aortic regurgitation.
       5. Left and right ventricular dilation.
       6. Intrauterine pregnancy.
       7. Asthma.
       8. Allergies.

      Prognosis: Fair.

(R. at 207.)

      In his decision the ALJ wrote, "[t]he claimant's complaints of disabling pain and other symptoms and limitations precluding all significant work activity are not credible . . ." (R. at 25.) The ALJ evaluated Appellant's credibility after a hearing at which there was no Spanish interpreter, Appellant spoke "not much" English and at which when asked, "So you would prefer to have an interpreter to help you?" Appellant responded "Yeah." At Appellant's attorney's suggestion, the hearing proceeded without an interpreter. The entire proceeding required just 10½ pages to record, and it is obvious that Appellant did not understand much of what was going on. It certainly did not provide a basis for a credibility determination. An evaluation of Appellant's complaints of disabling pain and other symptoms and limitations can only be based on the full written record.

      The Commissioner also argues that this Court is required to remand to Step 1 as a matter of law, but does not cite any precedent to support this claim. The Commissioner cites only to the Hearings, Appeals and Litigation Law ("HALLEX") manual for the proposition that the ALJ must consider all issues *de novo*. However, the HALLEX manual actually states that the ALJ must consider all "pertinent" issues *de novo*. HALLEX I-2-8-18 (A). Inclusion of the word "pertinent" in the manual is an indication that a case may be remanded for adjudication of only the particular steps in the inquiry which are disputed on appeal.

Furthermore, and contrary to the Commissioner's contention, courts, including the Court of Appeals, regularly remand with instructions to address specific steps. See, e.g., Markel v. Barnhart, 324 F.3d 182, 183 (3d Cir. 2003) (remanding and "direct[ing] the ALJ to complete Step 3 of the evaluation process"); Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 126 (3d Cir. 2000) (remanding with instructions that the ALJ "fully develop the record and explain his findings at step three"); Gail v. Commissioner of Social Sec., 2008 WL 2704984, at *7 (D.N.J. July 9, 2008) (reversed and remanded for "reexamination of the ALJ's findings at Step 3 and Step 5."). It is therefore appropriate for this Court to remand the case for further proceedings at Step 5. The Court finds that both arguments advanced by the Commissioner are unsubstantiated. The Commissioner presents no evidence that the ALJ's ruling in Steps 1 through 4 was erroneous, and there is no precedent compelling this Court to remand all five steps. Remand on Steps 1 through 4 would simply require the parties to rehash arguments and make the court spend further resources simply to give the Commissioner a chance to relitigate this case. It is expected that the VE, when he renders his opinion, will hear all of the full record in this case and not just the ALJ's truncated summary of it.

### III.  CONCLUSION

For the foregoing reasons, the determination of the Commissioner will be affirmed with regards to Steps 1 through 4 and remanded for further proceedings at Step 5 in accordance with this opinion. The Court will enter an order implementing this opinion.

s/ Dickinson R. Debevoise\
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: July 21, 2009